United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA OMNI DEVELOPMENT, LLC,<br>Plaintiff,<br>v.<br>GH PACVEST, LLC,<br>Defendant. | Case No. 26-cv-08709-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 6 |

The instant case is a commercial dispute. Plaintiff Alpha Omni Development, LLC ("Omni") has filed suit against Defendant GH PacVest, LLC ("GH") for, *inter alia*, breach of an alleged oral joint venture agreement. Now pending before the Court is GH's motion to dismiss. Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **GRANTS** Defendant's motion to dismiss but gives Omni leave to amend.

## I. FACTUAL & PROCEDURAL BACKGROUND

In its complaint, Omni alleges as follows.

Omni is a company primarily owned by AlphaX RE Capital, Inc. ("AlphaX"). AlphaX is a company involved with real estate investment and asset management. *See* Compl. ¶¶ 2, 7. Its business includes, *e.g.*, development of residential projects, land acquisition and land use approval, and project management. *See* Compl. ¶ 7. The CEO and CFO of AlphaX is Stephanie Yi. *See* Compl. ¶ 9. Imran Angelov Farooq is a general partner at AlphaX. *See* Compl. ¶ 10.

GH is a real estate holding company for real estate development in California. *See* Compl. ¶ 14. It is managed by GH Pacific Investment Holding, LLC ("GH Pacific"), which in turn is owned by GH America Investment Group ("GH America"). GH America is the U.S. affiliate of a

Chinese real property investment group. *See* Compl. ¶ 12.

In 2017, GH purchased three adjoining properties in Dubin, California, consisting of approximately 192 acres, for $130 million. *See* Compl. ¶ 16. The complaint refers to the development of this area as the "Dublin Fallon 580 Project."

In or about mid-2023, GH approached AlphaX and Ms. Yi (the CEO and CFO of AlphaX)

> with the intent to join into a collaborative joint venture between their companies for ***the development and marketing of the property held in the Dublin Fallon 580 Project,*** wherein YI's company would provide experience, guidance, and expertise in developing and marketing certain properties involved in the Dublin Fallon 580 Project.

Compl. ¶ 19 (emphasis added). "OMNI was then created in 2024 as a real estate and consulting firm,[[1]] in part to advise and assist on the development and marketing for the joint venture with GH . . . . In 2024, GH . . . and OMNI agreed to enter into the joint venture agreement." Compl. ¶ 20.

Notably, the joint venture agreement entered into by Omni and GH was not written but rather oral.[2] *See* Compl. ¶ 24. Under the agreement,

> OMNI would provide advice and/or assistance ***for marketing, design, planning, and permitting, as well as sale, on certain specific parcels within the Dublin Fallon 580 Project and collaborate with others involved***. As the properties were developed and portions were sold, GH . . . and OMNI agreed to split profits of the sales along industry standards, with 30% of such profits going to OMNI. In addition, one term of the joint venture agreement was to give OMNI thirty (30) acres at a discounted rate, as a form of payment.

Compl. ¶ 21 (emphasis added). As alleged, these were the material terms of the agreement. Nonmaterial terms were left "to be finalized later as the properties were developed and parcels started to be sold." Compl. ¶ 21.

---

[1] Ms. Yi and Mr. Farooq are managers and members of Omni. *See* Compl. ¶¶ 9-10.

[2] Although the joint venture agreement was not written, it was allegedly memorialized in other ways, *e.g.*, through course of performance, documents reflecting that Omni had authority to act on behalf of GH, and emails implicitly acknowledging Omni's compensation structure. *See* Compl. ¶ 24; *see also* Compl. ¶¶ 25-28 (providing examples).

Apparently, the property held in the Dublin Fallon 580 Project

> has now been split into eleven separate parcels for development. The approximately 192 acres is planned as a district-scale, mixed-use community featuring up to 238 homes, together with up to approximately [3.3 million] square feet of commercial and campus office development. It will also deliver meaningful public amenities, including about 7.2 acres of community parkland and an expanded network of public open space and natural park areas . . . .

Compl. ¶ 23.

In February 2025, the parties took action to implement the alleged provision in the joint venture agreement under which GH would sell Omni 30 acres at a discounted rate. GH executed a Purchase and Sale Agreement ("PSA") to convey 18.34 acres to Synergy Industrial Partners for approximately $21.1 million. *See* Compl. ¶ 29. Synergy is "an AlphaX and OMNI affiliate formed to hold title."[3] Compl. ¶ 29. The parties agreed that the purchase price for the property would be reduced by $1,991,000. *See* Compl. ¶ 30. Omni put funds into escrow for the deal. *See* Compl. ¶ 29.

Approximately a year later, Omni learned that GH had solicited offers to sell the Synergy property and had moved to cancel the Synergy contract. *See* Compl. ¶ 33. GH also refused to pay Omni for the value of its joint venture services and took action to terminate the joint venture. *See* Compl. ¶ 34.

> As a result, Plaintiff's damages include the $1,991,000 reduction value tied to the land conveyance, expectancy damages consisting of 30% of profits from parcel sales, and statutory damages [under California Civil Code § 3306] for breach of the agreement to convey the real property, including price paid, title/escrow expenses, and the difference between the agreed price and value at breach, preparation expenses, consequential damages, and interest.

Compl. ¶ 37.

Based on, *inter alia*, the above allegations, Omni has sued for (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. Omni has also asserted a claim for (3) fraudulent inducement of contract. *See* Compl. ¶ 38 ("GH . . . represented it would compensate Plaintiff to induce Plaintiff's performance, while concealing its intent to cancel the

---

[3] According to Omni, it is a beneficiary of the agreement. *See* Compl. ¶ 9.

land sale and withhold compensation after receiving the benefits of Plaintiff's work."); *see also* Compl. ¶¶ 53-54.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Because Omni has asserted a claim for fraud, Federal Rule of Civil Procedure 9(b) also applies. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.



United States District Court
Northern District of California

United States District Court
Northern District of California

2018).

B. Breach of Contract

The main claim asserted by Omni is one for breach of contract. Specifically, Omni alleges that it entered into a joint venture agreement with GH and that GH breached the agreement "by, among other things, preventing and blocking [Omni's] performance, failing to compensate [Omni] as agreed, and improperly engaging in offers and selling the [Synergy] property to a third-party despite the valid agreement already in place to sell the property to [Omni]." Compl. ¶ 44.

GH attacks the contract claim on multiple grounds. For purposes of this order, the Court need only address two of GH's arguments: (1) that Omni has failed to adequately allege the parties entered into a joint venture (at best, Omni was simply a vendor hired to provide services to GH); and (2) that any alleged agreement is unenforceable under the statute of frauds.

1. Joint Venture

According to GH, the breach-of-contract claim fails because Omni has alleged breach of a joint venture agreement specifically, and it has failed to adequately allege a joint venture.

"A joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit." *Cochrum v. Costa Victoria Healthcare, LLC*, 25 Cal. App. 5th 1034, 1053 (2018) (internal quotation marks omitted). "[A] joint venture exists where [1] there is an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, [2] an understanding as to the sharing of profits and losses, and [3] a right of joint control." *Chambers v. Kay*, 29 Cal. 4th 142, 151 (2002) (internal quotation marks omitted); *see also Jacobs v. Locatelli*, 8 Cal. App. 5th 317, 328 n.10 (2017) (stating that the following are the elements of a joint venture: "(1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control").

a. Element No. 1: Ownership Interest

The first joint venture element has also been described as each member having an ownership interest. *See Cochrum*, 25 Cal. App. 5th at 1053; *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 370 (2008). *Accord* CACI 3712 (listing the elements of a joint venture as follows: (1) two or more persons/entities combine their property, skill, or knowledge

United States District Court
Northern District of California

with the intent to carry out a single business undertaking; (2) each has an ownership interest in the business; (3) they have joint control over the business, even if they agree to delegate control; and (4) they agree to share the profits and losses of the business).

GH argues that Omni has failed to sufficiently allege a joint ownership interest by the two parties. In evaluating this argument, the Court must first consider what is the alleged joint venture. Based on the allegations in the complaint, the alleged joint venture is the development and marketing of the real property held in the Dublin Fallon 580 Project. *See, e.g.*, Compl. ¶ 19 (alleging that GH approached AlphaX and Ms. Yi (AlphaX's CEO and CFO "with the intent to join into a collaborative joint venture between their companies for the ***development and marketing*** of the property held in the Dublin Fallon 580 Project") (emphasis added); *see also* Compl. ¶ 20 (alleging that "OMNI was then created in 2024 as a real estate and consulting firm, in part to advise and assist on the development and marketing for the joint venture with GH," and, "[i]n 2024, GH . . . and OMNI agreed to enter into the joint venture agreement"). Omni emphasizes that, even though GH owned the real property, that does not preclude the two companies from having had a joint venture to develop and market the property. *See* Opp'n at 5 ("Defendant attempts to conflate GH[] with the joint venture. They are different. GH[] was the owner of the Property. The joint venture, in which both GH[] and Omni had ownership and interest, was a joint development and marketing endeavor.").

GH maintains that there is no allegation that Omni "acquired, contributed, or held any ownership interest . . . in the development enterprise"; it argues that Omni is alleged to have contributed 'advice and/or assistance' – services, not capital or property." Mot. at 13. But GH does not cite any authority for its proposition that, for purposes of a joint venture, ownership requires a co-venturer to contribute capital or property. GH has also failed to explain why an ownership interest in a joint venture cannot be predicated on a co-venturer contributing services, skills, or knowledge. *See, e.g.*, CACI 3712 (noting that a joint venture involves, *inter alia*, two or more persons/entities combining their property, skill, or knowledge with the intent to carry out a single business undertaking); *see also Page v. Page*, 55 Cal. 2d 192, 195 (1961) (in discussing a partnership, stating that, "[i]n *Mervyn Investment Co. v. Biber*, one partner contributed all the

capital, the other contributed his services, and it was understood that upon the repayment of the contributed capital from partnership profits, the partner who contributed his services would receive a one-third interest in the partnership assets"); *cf. Tesla v. Pelinkovic*, No. 25-2246-cv, 2026 U.S. App. LEXIS 10455, at *3 (2d Cir. Apr. 13, 2026) (stating that, under New York law, "[i]n order to form a joint venture, . . . '(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) *each must make a contribution of property, financing, skill, knowledge, or effort*; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses'") (emphasis added).

To be sure, Omni's claim that there was joint ownership because Omni "had authority to act on GH[]'s behalf in the marketing of the properties," Opp'n at 5, is weak. As GH contends, one person/entity acting on behalf of another may be in the nature of an agency relationship rather than reflecting joint ownership. But given that this case is in its infancy and all reasonable inferences are to be made in Omni's favor at this stage of the proceedings, Omni survives this part of GH's challenge.

b. <u>Element No. 2: Understanding to Share Profits and Losses</u>

GH contends that a joint venture is still insufficiently pled because Omni has failed to allege that there was an agreement to share in losses, not just profits. *See* Mot. at 13 ("[As alleged,] Omni was to receive '30% of such profits.' The Complaint never alleges that Omni would bear any share of losses, fund any portion of development, guarantee any obligation, or absorb any downside if the parcels sold for less than their cost.").

In response, Omni argues first that a joint venture merely requires an understanding on the sharing of profits, not losses. The Court is not persuaded. To be sure, there are some cases that do simply refer to an understanding on profit sharing; that is, they do not *explicitly* mention an understanding on the sharing of losses as well. *See, e.g.*, *Cochrum*, 25 Cal. App. 5th at 1053. However, an agreement to share in losses, not just profits, is essentially *implicit* from the fact of the joint venture. That is, if a co-venturer's contribution to the joint venture – whether capital or services – does not yield any benefits, then that is a shared loss to the joint venture.

To the extent Omni relies on *Simmons v. Ware*, 213 Cal. App. 4th 1035 (2013), that case is not availing. In *Simmons*, the court referred to a Ninth Circuit decision from 1957, which stated, *inter alia*, that "'[a]greement to share in the profits and losses of the enterprise are *essential* to a joint venture, *although* there is some authority to the effect that the sharing of losses is not necessary.'" *Id.* at 1054 (emphasis added; quoting *Shell Oil v. Prestidge*, 249 F.2d 413, 416 (9th Cir. 1957). Thus, *Shell Oil* viewed an agreement to share in both profits and losses as *required* – the opposite of what Omni argues. While *Shell Oil* acknowledged some authorities to the contrary, the authorities it cited were simply the American Jurisprudence encyclopedia and state court decisions from Idaho and Montana – not California.

The Court, therefore, rejects Omni's contention that there need not be an understanding on the sharing of losses in order to have a joint venture. That being said, Omni makes a second argument that the Court finds persuasive. Specifically, Omni contends that, even if an understanding on the sharing of losses is required, it has made sufficient allegations of such an understanding. The Court agrees. Given the Court's analysis above, Omni has sufficiently alleged an agreement as to the sharing of losses (*i.e.*, the loss of the value of its services contributed to the venture), and not just profits. *Cf. Rae v. Cameron*, 112 Mont. 159, 169 (1941) ("'There is authority . . . that the sharing of losses is not essential, or at l[e]ast, that there need not be a *specific* agreement to share the losses, and that if the nature of the undertaking is such that no losses other than *those of time and labor in carrying it out* are likely to occur, an agreement to divide the profits may suffice to stamp it as a joint adventure, although nothing is said about sharing in the losses.'") (emphasis added). All reasonable inferences must be made in Omni's favor at this stage of the proceedings, and it is reasonable to infer that the parties agreed to share losses because, if Omni's development and marketing efforts to support the joint venture failed, that would be a shared loss of the joint venture.

c. <u>Element No. 3: Right of Joint Control</u>

Finally, GH argues that the assertion of a joint venture founders because Omni has failed to adequately allege the right of joint control over the purported venture:

> The Complaint alleges no right on Omni's part to approve a sale, veto a price, direct development, select parcels, bind GH . . . , or participate in any management decision. To the contrary, its own theory of breach is that GH . . . unilaterally "solicited offers," unilaterally "moved to cancel" the Synergy transaction, and unilaterally "prevent[ed] and block[ed] Plaintiff's performance."

Mot. at 14.

In response, Omni contends that it has sufficiently alleged joint control based on ¶ 25 of the complaint. There, Omni alleges that, "[i]n May 2024, GH['s] CEO . . . expressly represented to a third party, in writing, that GH . . . has engaged FAROOQ to act for OMNI in the joint venture and authorized OMNI to negotiate with local trade unions for Dublin Fallon 580 Project – an admission of the joint venture and OMNI's agency." Compl. ¶ 25. Omni's position is not persuasive.

- The first allegation in ¶ 25 – that GH engaged Mr. Farooq to act for Omni in the joint venture – is vague and/or conclusory.
- The second allegation in ¶ 25 – that GH authorized Omni to negotiate with local trade unions – simply indicates agency as it is limited to a particular aspect of the transaction. Omni asserts: "Authorization to 'negotiate' with a trade union is the right to make substantive binding decisions relating to the Property and constitutes the requisite control over the joint venture." Opp'n at 6. But the limited scope of authority – negotiating with unions – does not, in and of itself, suggest that Omni could exercise joint control over the alleged joint venture of developing and marketing the property held in the Dublin Fallon 580 Project. *See* Reply at 4 (noting lack of allegations that "Omni could bind GH . . . to a transaction, approve or veto parcel sales, determine sale prices, select purchasers, direct development, or otherwise exercise an equal or joint voice over the enterprise").

d. <u>Summary</u>

For the foregoing reasons, Omni has failed to allege a joint venture (and therefore does not have a claim for breach of an alleged joint venture agreement). Even if Omni has adequately alleged (1) an ownership interest and (2) an agreement to share losses, not just profits, Omni has

failed to adequately allege (3) the right of joint control over the purported venture. Accordingly, dismissal of the claim for breach of contract – which is predicated on an alleged joint venture agreement specifically – is warranted.

That being said, the Court gives Omni leave to amend. In amending, Omni is not precluded from trying to replead a joint venture agreement specifically. However, Omni is also not barred from asserting a claim for breach of a contract *not* predicated on a joint venture.

2. Statute of Frauds

Although dismissal is proper for the reasons stated above, the Court still addresses GH's independent argument that any alleged agreement between the parties is invalid based on the statute of frauds. Analysis of the statute of frauds will be beneficial to both parties given that the Court is giving Omni leave to amend.

In California, the statute of frauds is codified at California Civil Code § 1624. *See* Cal. Civ. Code § 1624. Section 1624 provides in relevant part that "[t]he following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent":

- "[a]n agreement . . . for the sale of real property, or of an interest therein (§ 1624(a)(3)); and
- "[a]n agreement that by its terms is not to be performed within a year from the making thereof" (§ 1624(a)(1)).

a. Sale of Real Property

One of the main damages claimed by Omni is $1,991,000 – *i.e.*, the "discount" it got for the property that GH sold to Omni's affiliate, Synergy. GH contends that the alleged sale of the property is subject to the statute of frauds.

In response, Omni argues that the statute of frauds does not apply because it is simply trying to enforce an agreement by GH to pay a *monetary obligation* to Omni, albeit one generated "through a property sale to Synergy." Opp'n at 10. Omni adds that, in any event, if there is a "writing" requirement because of the statute of frauds, the land transfer to Synergy was



United States District Court
Northern District of California

documented in the PSA entered into by GH and Synergy.[4]

Both of Omni's arguments lack merit. As to the first argument, Omni expressly alleges in its complaint that "one term of the joint venture agreement was to give OMNI thirty (30) acres at a discounted rate, as a form of payment." Compl. ¶ 21. That is an agreement for the sale of real property, and Omni largely admits as much by asserting, in its complaint, damages under California Civil Code § 3306 as relief. *See* Compl. ¶ 45 (claiming damages under § 3306); Cal. Civ. Code § 3306 (providing that "[t]he detriment caused by the breach of an agreement *to convey an estate in real property*, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, the expenses properly incurred in preparing to enter upon the land, consequential damages according to proof, and interest") (emphasis added). Accordingly, the Court rejects Omni's contention that the statute of frauds is not applicable in the first instance.

As for Omni's second argument – *i.e.*, that the Synergy PSA is a writing that satisfies the statute of frauds – GH disagrees because

> Omni does not sue on the PSA. Rather, it sues on an alleged oral promise. The only writing that could satisfy section 1624 as to that promise would be a writing subscribed by GH . . . embodying the venture term itself . . . . The PSA is a contract between GH . . . and Synergy that nowhere mentions Omni, a joint venture, profit sharing (except going in the exact opposite direction [in GH's favor]), or any discounted-compensation obligation owed to Omni.

Reply at 7.

In evaluating the parties' positions, the Court bears in mind that the "[p]urpose of the statute of frauds is to prevent fraud and perjury with respect to certain agreements by requiring for enforcement the more reliable evidence of some writing signed by the party to be charged." *Lombardo v. Santa Monica Young Men's Christian Ass'n*, 169 Cal. App. 3d 529, 539 (1985)

---

[4] The Court takes judicial notice of the Synergy PSA pursuant to the incorporation-by-reference doctrine. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.").

(internal quotation marks omitted). "In order to satisfy the statute of frauds a written note or memorandum of a contract must state with reasonable certainty (1) each party to contract, (2) the subject matter to which the contract relates, and (3) the terms and conditions of all promises constituting the contract and by whom and to whom the promises are made." *Id.* at 538-39. "***Every material term** of an agreement within the statute of frauds must be reduced to writing. No essential element of a writing so required can be supplied by parol evidence.*" *Id.* at 539 (internal quotation marks omitted, italics in original, and bold added; also stating that, "[w]here a writing discloses no promise or agreement and cannot be made clear as to its significance without resort to parol evidence, it is inadequate to satisfy the statute of frauds").

Given the standard above, if GH were to raise the statute-of-frauds argument as to Synergy, then clearly the PSA would be a sufficient writing. The problem for Omni is that there must be a writing reflecting the alleged agreement under which GH would sell ***Omni*** 30 acres (at a discounted rate). The Synergy PSA is not a sufficient writing since it concerns the sale to Synergy and says nothing about Omni (and the contract on its face seems to preclude any beneficiary), and the PSA involves a sale of 18.34 acres (not 30). Nor does the PSA say anything about the application of a specific discount to the purchase price pursuant to the joint venture agreement.

b. Performance within a Year[5]

GH contends that the statute of frauds is applicable for an additional reason – *i.e.*, based on § 1624(a)(1), which covers agreements that, by their terms, are not to be performed within a year from the making thereof. In *Clarke v. Yu*, 119 Cal. App. 5th 199 (2026), the state court addressed § 1624(a)(1) in the context of a joint venture. The court noted:

---

[5] The Court has considered both parties' supplemental briefs, although both were technically filed late.

- While Omni's filing was late, it emailed a copy of its filing to the Court within the deadline specified.
- GH's filing was late because of a purported problem its counsel had with accessing the document constituting the supplemental brief. Even if that claim were to be credited, GH has not explained why its supplemental brief was not filed until 1:49 p.m. on Monday, October 19, 2026, when access to the document was resolved more than a day earlier. Nevertheless, out of an abundance of caution and in the interest of justice, the Court has reviewed and considered GH's supplemental brief.

> We have not found any case that expressly exempts from the statute of frauds an oral or implied joint venture that by its terms cannot be performed within a year. Several other states have held that "a joint venture that is to continue for more than a year is within the statute" of frauds. We discern no reason why the same should not apply under our state law. We thus hold that oral and implied joint ventures are subject to the statute of frauds if the agreement, by its terms, cannot be performed within a year from its making.

*Id.* at 207.

Relying on *Clarke*, GH argues that the statute of frauds applies to the alleged contract between it and Omni because the alleged joint venture "could not possibly have been performed within year" given that the project "encompasses services across a 192-acre, eleven-parcel, mixed-used master plan of up to 238 homes and 3,299,670 square feet of commercial development" (as alleged in the complaint). Mot. at 19 (citing Compl. ¶¶ 21, 23). In response, Omni argues that "'California has narrowly construed [§ 1624(a)(1)] as applying only where the *express* terms of the oral contract preclude performance within one year.'" Opp'n at 11 (emphasis added; quoting *Perkowski v. Bellvill*, No. SACV 19-2295-JVS (ADSx), 2020 WL 3891674 (C.D. Cal. Mar. 2, 2020)); *see also Plumlee v. Poag*, 150 Cal. App. 3d 541, 548 (1984) ("The words of subdivision 1 have been interpreted literally and narrowly by our courts. Only those contracts which expressly preclude performance within one year are unenforceable.").

Although Omni has cited authorities to support its position, it has glossed over the full context of the authorities, in particular, their reliance on *White Lighting Co. v. Wolfson*, 68 Cal. 2d 336 (1968). There, the California Supreme Court stated: "The cases hold that section 1624, subdivision 1, applies only to those contracts which, by their terms, cannot possibly be performed within one year." *Id.* at 343. In a footnote, the Supreme Court added:

> "In its actual application, however, the courts have been perhaps even less friendly to this provision [the "one year" section] than to the other provisions of the statute [of frauds]. They have observed the exact words of this provision and have interpreted them literally and very narrowly. . . . To fall within the words of the provision, therefore, the agreement must be one of which it can truly be said *at the very moment it is made*, 'This agreement is not to be performed within one year'; in general, the cases indicate that there must not be the slightest possibility that it can be fully performed within one year." (Italics added.) (2 Corbin on Contracts, § 444, at pp. 534-535.)

*Id.* at 343 n.2 (emphasis in original). Thus, under *White Lighting*, the contract need not expressly

state that it will be performed within a year in order to avoid the statute of limitations. Rather, the test is essentially whether there is the "slightest possibility" that the contract can be performed within a year – even if "it is probable that it will extend beyond one year." *Plumlee*, 150 Cal. App. 3d at 549 (also stating that a contract is not invalid "unless it contains language 'whose reasonable interpretation shows a clear intention that it cannot be performed within the year'"); *see also* Rest. 2d of Contracts § 130, Comment (a) (stating that "the provision covers only those contracts whose performance cannot possibly be completed within a year").

In the case at bar, whether the parties' contract could possibly be performed within a year depends in large part on what the scope of their contract was. As noted above, Omni asserts that the parties had an agreement to jointly ***develop and market*** the property held in the Dublin Fallon 580 Project.

> OMNI would provide advice and/or assistance ***for marketing, design, planning, and permitting, as well as sale, on certain specific parcels within the Dublin Fallon 580 Project*** and collaborate with others involved. As the properties were developed and portions were sold, GH . . . and OMNI agreed to split profits of the sales along industry standards, with 30% of such profits going to OMNI. In addition, one term of the joint venture agreement was to give OMNI thirty (30) acres at a discounted rate, as a form of payment.

Compl. ¶ 21 (emphasis added). At the hearing, Omni made clear the alleged breadth of the joint venture, asserting that the joint venture covered the development, marketing, and sale of the entire Project, *i.e.*, not just a limited number of parcels in the Project. Given this scope, the Court agrees with GH that there is not the slightest possibility that the development, marketing, and sale of the entire Project could be accomplished within a year. *See Clarke*, 119 Cal. App. 5th at 207-08 (acknowledging plaintiffs' attempt to narrow the scope of the alleged joint venture agreement to *creating* a new company for the purpose of developing certain technology, but noting that this was not consistent with deposition testimony that the purpose of the joint venture was to develop and ultimately commercialize the technology, and evidence established that the technology could not be developed within one year).

In its supplemental brief, Omni points out that, once one party's performance is complete, then the contract is taken outside of the statute of frauds. *See Zakk v. Diesel*, 33 Cal. App. 5th

431, 454 (2019) (in addressing whether a contract was invalid based on § 1624(a)(1), holding that plaintiff's "allegation that he fully performed all of his obligations under the alleged oral or implied-in-fact contract was sufficient to take the contract out of the statute of frauds"; citing in support, *inter alia*, the Restatement Second of Contracts); Rest. 2d of Contracts § 130, Comment (d) (stating that, "[i]f either party promises a performance that cannot be completed within a year, the Statute [of Frauds] applies to all promises in the contract, including those which can or even must be performed within a year[,] *[b]ut* unlike other provisions of the Statute, the one-year provision does not apply to . . . any contract which has been *fully performed on one side, whether the performance is completed within a year or not*") (emphasis added). The problem for Omni is that it has not alleged that its performance under the parties' agreement has been fully completed. Indeed, given Omni's contention that its obligations included providing advice and assistance on the sale of parcels in the Project, that performance could not be complete because there is no indication that all sales in the Project have been completed.

Omni advances a second argument that is equally unavailing. According to Omni, even if the statute of frauds applies, Omni has sufficiently alleged there are writings to satisfy the statute. But the handful of writings Omni makes reference to in the complaint are not sufficient. As noted above, "[e]very material term of an agreement within the statute of frauds must be reduced to writing." *Lombardo*, 169 Cal. App. 3d at 538-39. In its complaint, Omni simply refers to, *e.g.*, (1) a writing from GH stating that Omni was authorized to negotiate with local trade unions for the Project; (2) an email from GH in which it did not dispute statements made by Omni "referenc[ing] the land transfer [to Omni] and value being added to the joint venture"; and (3) emails from GH "acknowledge[ing] its appreciation of the partnership with OMNI on the Project." Compl. ¶ 25-26, 28.

Finally, Omni argues that, even if it has not fully performed under the contract, partial performance is a means by which it can still obtain some relief in spite of the statute of frauds.

> Part performance allows enforcement of a contract lacking a requisite writing in situations in which invoking the statute of frauds would cause unconscionable injury. "[T]o constitute part performance, the relevant acts either must 'unequivocally refer[]' to the contract, or 'clearly relate' to its terms. Such conduct satisfies

> the evidentiary function of the statute of frauds by confirming that a bargain was in fact reached." In addition to having partially performed, the party seeking to enforce the contract must have changed position in reliance on the oral contract to such an extent that application of the statute of frauds would result in an unjust or unconscionable loss, amounting in effect to a fraud.

*Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 555 (2008); *see also* Rest. 2d of Contracts § 130, Comment (e) (noting that "[p[art performance not amounting to full performance on one side does not in general take a contract out of the one-year provision," but "[r]estitution is available in such cases, and doctrines of estoppel and fraud may be applicable"); *id.* § 375 (providing that "[a] party who would otherwise have a claim in restitution under a contract is not barred from restitution for the reason that the contract is unenforceable by him because of the Statute of Frauds unless the statute provides otherwise or its purpose would be frustrated by allowing restitution").[6]

In the instant case, there are allegations in Omni's complaint that suggest part performance, but the extent of performance is not entirely clear, which also has bearing or whether there has been reliance and an unjust or unconscionable loss. Accordingly, the Court concludes that that the statute of frauds, as codified in § 1624(a)(1), is a bar to the breach-of-contract claim as pled, but given the possibility of some limited relief that may be asserted on the basis of partial performance, including a potential claim for equitable estoppel, Omni has leave to amend.

---

[6] Equitable estoppel may arise even in the context of the sale of real property. However, in that situation, part performance must meet certain additional requirements.

> The doctrine of part performance by the purchaser is a well-recognized exception to the statute of frauds as applied to contracts for the sale or lease of real property. "Under the doctrine of part performance, the oral agreement for the transfer of an interest in real property is enforced when the buyer has taken possession of the property *and either* makes a full or partial payment of the purchase price, or makes valuable and substantial improvements on the property, in reliance on the oral agreement." Payment of the purchase price alone, without the buyer obtaining possession or making substantial improvements to the property, is not sufficient part performance to preclude application of the statute of frauds.

*Sutton v. Warner*, 12 Cal. App. 4th 415, 422 (1993) (emphasis in original). In the case at bar, there is no dispute that Omni (or Synergy) did not take possession of the real property at issue. Thus, Omni could not amend to avoid the statute of frauds with respect to the transfer of real property.

United States District Court
Northern District of California

United States District Court
Northern District of California

C. Breach of the Implied Covenant

Omni's second cause of action is for breach of the implied covenant of good faith and fair dealing. Both parties agree that resolution of this claim turns on resolution of the claim for breach of contract – *i.e.*, the good faith claim rises or falls with the contract claim. Because the Court is dismissing the contract claim, the claim for breach of the implied covenant is likewise dismissed (with leave to amend consistent with the above).

D. Fraud

Omni's final cause of action is one for fraud – specifically, fraudulent inducement of contract. According to Omni, "GH . . . represented it would compensate Plaintiff to induce Plaintiff's performance, while concealing its intent to cancel the land sale and withhold compensation after receiving the benefits of Plaintiff's work." Compl. ¶ 38; *see also* Compl. ¶¶ 53-54.

The Court dismisses the fraud claim because, as GH argues, Omni has failed to sufficiently allege that, *at the time the parties entered into the alleged joint venture*, GH had no intent to pay. *See Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) (emphasizing that "'something more than nonperformance is required to prove the defendant's intent not to perform his promise'"; indicating that fraudulent intent may be inferred from circumstantial evidence such as "defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform"). Omni has simply made the conclusory allegation that "Defendants' representations were false and, at the time Defendants made the above representations, Defendants knew they were false, or made the representations recklessly and without regard for its [sic] truth. In addition, Defendants did not intend to perform the promises when they made them." Compl. ¶ 54. There are no concrete facts to back up this conclusory allegation. Omni has leave to amend if it can do so in good faith in compliance with its obligations under Federal Rule of Civil Procedure 11.

/ / /

/ / /

United States District Court
Northern District of California

## III. CONCLUSION

For the foregoing reasons, the Court grants GH's motion to dismiss in its entirety but Omni has leave to amend all three causes of action. To be clear, the Court is allowing Omni to plead partial performance as a means to avoid the statute of frauds to the extent GH has invoked the provision that covers agreements that, by their terms, are not to be performed within a year from the making thereof. The Court is not allowing Omni to plead partial performance to avoid the statute of frauds to the extent GH has invoked the provision that covers real estate transfers. *See* note 6. In addition, the Court gives Omni leave to assert a claim for quantum meruit, *see Mayo v. Pac. Proj. Consultants, Inc.*, 1 Cal. App. 3d 1013, 1018-19 (1969) (*quantum meruit* for part performance might apply to context of alleged joint venture), although, of course, GH would not be precluded from challenging any such claim.

Omni has until November 24, 2026, to file an amended complaint. After Omni files its amended complaint, GH shall then have until December 22, 2026, to file a response, whether an answer or a motion to dismiss.

This order disposes of Docket No. 6.

**IT IS SO ORDERED**.

Dated: October 27, 2026

EDWARD M. CHEN
United States District Judge